L. T. SMITH v. THE RICHMOND AND DANVILLE RAILROAD
COMPANY.

*Negligence—Evidence—Burden of Proof.*

1. The facts being admitted or proved, negligence and contributory neg-
ligence are questions of law.

2. Where the injury is shown and there is nothing in the plaintiff's
proofs from which it may be implied that his own want of care
contributed to it, the burden of proving contributory negligence
is cast on the defendant; but if the undisputed facts, disclosed by
the plaintiff's case, show that he contributed to the accident by his
own negligence, it will not be error in the Court to direct a non-
suit.

3. Where the facts, in respect to the contributory negligence are contro-
verted, the issue should be submitted to the jury upon the whole
evidence with instructions that the plaintiff cannot recover if his
own carelessness was the contributory and proximate cause of the
injury.

CIVIL ACTION to recover damages for personal injuries,
tried before *Merrimon, J.,* at January Term, 1888, of DUR-
HAM Superior Court.

The plaintiff alleges that in June, 1887, he entered the reg-
ular passenger car attached to the freight train of the defend-
ant at Durham for the purpose of going to Hickory, and by
the negligence of the defendant company he was seriously
injured while in the coach at Durham.

The defendant company denies the negligence and alleges
that the injury received by the plaintiff, if any, was caused
by his own negligence.

The following issues were agreed upon:

1. Was plaintiff injured by defendant's negligence, as
alleged in complaint?

2. Did plaintiff's negligence contribute to his injury?

3. If so, was plaintiff's negligence the proximate cause of
the injury?

16

4. What damage, if any, has plaintiff sustained?

The plaintiff entered the coach at Durham on the morning of the 15th of June, 1887, and his testimony is as follows:

"I went to the depot at Durham to take the train about three o'clock in the morning of the 15th. A man in the railroad uniform, whom I think I saw afterwards taking up tickets, and whom I took to be the conductor, was asked by me if that was the place to get on, and he replied that the train would soon pull down in front of the ticket office. Pretty soon it did pull down, and he told me we could get on, and I assisted my wife to get on. When they pulled down, the engine and freight cars were cut loose, and were carried forward and thrown back on a side track; that was the condition of the cars when we got on. This train was the regular early morning freight, with passenger cars attached; it had a sleeper and first and second-class and baggage cars; it may have had the mail car, but I can't say. I bought tickets at the regular ticket office to Hickory for my wife and myself—first-class; I got in the first-class coach, and walked back near the middle and took a seat in the regular way. About that time a friend of mine came in; I got up and passed the usual salutations; I then sat down on the arm of the seat, my feet on the floor of the aisle, my elbow on the back of the seat, my hand clutching around the corner of the back of the seat next to the aisle, my wife sitting on a seat on the opposite side of the aisle—one or two seats in my rear; I had been sitting there may be a minute or more when a sudden shock came; the engine, with the freight cars, was thrown back against the coach, and I was thrown back against the corner of the seat in my rear; I was sitting on the arm of the seat, and the seat next in front was turned towards the rear of the coach, and the seat next in front was turned forward, bringing the backs near together. I had no warning of the approach of the train. When I

was thrown against the corner of the seat the sensation was a very painful one, with an indentation of the rib, and the second effect was to cause severe nausea. I was familiar with the methods of the night freight in Durham; I had traveled on it several times before; the train generally stays at Durham some time, shifting and coupling. There is a great deal more jolting and bumping in the coupling of freight trains than in passenger trains, and I knew this at the time. I knew when I got on the arm of the seat that the freight cars had not been coupled to the passenger coaches, and that they were to be coupled. Before I met my friend I had been sitting in the seat. I have traveled frequently on freight trains, and on this train, but the shock was more severe than usual."

There was other testimony in respect to the character and effect of the injuries sustained by plaintiff, which were of a serious nature.

Upon the conclusion of this testimony his Honor held that plaintiff was not entitled to recover.

Whereupon the plaintiff asked and obtained leave to submit to a nonsuit, and then appealed to the Supreme Court, alleging for error the aforesaid intimation and ruling of his Honor.

*Mr. W. W. Fuller*, for the plaintiff.
*Messrs. F. H. Busbee* and *C. M. Busbee*, for the defendants.

DAVIS, J., (after stating the case). The facts being admitted or proved, the question of negligence and of contributory negligence are questions of law. Does the evidence of the plaintiff (and it is to be taken most strongly in his favor) constitute contributory negligence, and was that negligence the proximate cause of the injury? If so, the ruling of the Court below was correct; if not, there was error.

The plaintiff gives a clear and intelligent statement of the facts, leaving no doubt as to how the unfortunate injury occurred. The Reports, English and American, abound in cases involving questions of negligence and of contributory negligence, and as the broad mark which separates due diligence and watchful care from gross negligence and reckless carelessness is narrowed to the point where it is not easy to distinguish between ordinary care and slight negligence, many conflicting decisions are found.

Even if the line could be clearly and distinctly defined, it would still, in many cases, be difficult to determine with certainty on which side to place them.

We understand the counsel, who so ably represented the plaintiff, to insist that if there is evidence of any negligence on the part of the defendant, whatever may be the evidence of contributory negligence on the part of the plaintiff, the issue must go to the jury, and that his Honor erred in holding that upon the testimony in the case the plaintiff was not entitled to recover.

We understand the rule to be well laid down in *Tuft* v. *Warman*, 94 Eng. Com. Law Rep., 573, cited by the Chief Justice in *Turrentine* v. *The Railroad*, 92 N. C., 638.

It is there said that the question for the jury is: " Whether the damage was occasioned entirely by the negligence or improper conduct of the defendant or whether the plaintiff himself so far contributed to the misfortune by his own negligence or want of ordinary and common care and caution, that but for such negligence and want of ordinary care and caution on his part, *the misfortune would not have happened ?*

" In the first place the plaintiff would be entitled to recover, in the latter not, as but for his own fault the misfortune would not have happened."

In *Owens* v. *R. R. Co.*, 88 N. C., 502, cited and relied on by counsel for the plaintiff, it is said, giving the authority for it, that " if negligence appears by the plaintiff's own testi-

mony the defendant might rest on it as securely as if proved by himself." Again, citing *Roberson* v. *Gray*, 28 Ohio St. Rep., 241: "It is only where the injury is shown by the plaintiff, and there is nothing that implies that his own negligence contributed to it, that the burden of proving contributory negligence can properly be said to be cast on the defendant; for where the plaintiff's own case raises the suspicion that *his own negligence* contributed to the injury, the presumption of due care on his part is so far removed that he cannot properly be relieved from disproving his own contributory negligence by casting the burden of proving it on the defendant. * * * The question should be left upon the whole evidence to the determination of the jury, with the instruction that the plaintiff cannot recover if his own negligence contributed to the injury." Of course if there be no dispute about the facts, and in law they constitute contributory negligence, and that is a question for the Judge, he must instruct the jury that the plaintiff cannot recover.

In *Harris* v. *R. R. Co.*, 27 Am. and Eng. R. R. Cases, 216, it was held, as we have held in *Wallace* v. *R. R.*, 98 N. C., 494, that the dangers naturally incident to travel by rail are greater on freight than on passenger trains, and call for a correspondingly higher degree of care on the part of passengers. In that case the train (a freight train with a caboose attached for passengers) had stopped to do some switching, and it was held to be such contributory negligence as would bar the plaintiff's recovery, if he knew, or by ordinary care could have known, that a part of the train was likely to be backed against the part to which the caboose was attached and that some concussion or jar would be the result, and " then without thinking about the approach of the cars, and without paying any attention to whether they were approaching or not, left his seat and stood up in the car and was thrown down and injured, when he would not have been,

had he kept his seat or resumed the same before the cars struck," his negligence was the proximate cause of the injury.

ASHE, J., in *Farmer* v. *Railroad*, 88 N. C., 564, says: "If the act of the plaintiff is directly connected, so as to be concurrent with that of the defendant, then his negligence is proximate and will bar his recovery."

The counsel for the plaintiff relies on the case of *Gee* v. *Mid. R. R. Co.*, 8 Q. B., 161; which was fully discussed and considered with great care and which he thinks bears an exact analogy to the case before us. Upon a careful examination, we arrive at a different conclusion and can find in it nothing which is at variance with the decisions of this Court. In that case the plaintiff, being a passenger on defendant's railway, "got up from his seat and put his hand on the bar which passed across the window of the carriage with the intention of looking out to see the lights of the next station and that the pressure caused the door to fly open and the plaintiff fell out and was injured"

Two questions were left to the jury: 1st. Whether there was negligence on the part of the defendant in not properly fastening the door? 2d. Whether there was negligence or improper or imprudent conduct on the part of the plaintiff?

It appears from the case (and such we understand to be the fact) that in England, railway carriages on leaving stations are shut and fastened from the outside, and it is the duty of the railway servants, when a train leave a station, to see that the doors are properly fastened. It seems that the passenger when he enters the carriage is shut in and the door fastened from the outside, and GROVE, J., says: "the doors are so constructed, and properly so, because if you arranged a door so that the passenger could open it from the inside, it would be an extremely perilous system—passengers would be continually opening the door and it would be very much worse for the general safety of the public." This being so, it is said that a passenger who rises from his seat to

look out to view the scenery or for any other lawful purpose, "has a right to assume and is justified in assuming that the door is properly fastened; and if by reason of its not being properly fastened his lawful act causes the door to fly open the accident is caused by the defendant's negligence." There was no negligence on the part of the passenger. It was held in *Bridgers* v. *N. S. R. R.*, cited in that case, that "if facts are disclosed in the plaintiff's case, the truth of which is not disputed, and which, if true, clearly shows that the plaintiff contributed to the accident, then the Judge may nonsuit, not because he can take upon himself to find the contributory negligence proved, but because, in such a case, the plaintiff fails upon an issue which lies upon him, viz.: the issue whether the damage is caused by the negligence of the defendants."

There is no dispute in the case before us as to how the injury occurred. The plaintiff was sitting on the arm of the seat, when the engine and freight cars were thrown back against the coach, with a sudden shock, and the plaintiff says that "there is a great deal more jolting and bumping in the coupling of freight trains than in passenger trains, and I knew it. I knew when I got on the arm of the seat that the freight cars had not been coupled to the passenger coaches and that they were to be coupled." If the negligent and thoughtless act of the plaintiff was the contributory and proximate cause of the injury, as we think the undisputed facts show, there was no error in the ruling of his Honor.

No error.