The plaintiff, Lucy Brigman, is the wife of W. B. Brigman and instituted an action for damages against the defendant. The husband, W. B. Brigman, also instituted an action against the defendant to recover for loss of services of his said wife and expenses incurred by reason of her injury. Both cases were consolidated and tried together.
Plaintiff, W. B. Brigman, is a carpenter, and the defendant operates a bleaching plant about three miles east of the town of Biltmore.
There was a road or driveway upon the premises, and the plaintiff, W. B. Brigman, "drove on to the defendant's property and parked his automobile in the parking space, where he had on two former occasions seen other automobiles parked and where two automobiles were then parked." His car was parked about fifteen or twenty feet from the road.
The plaintiff, W. B. Brigman, testified: "I went up there because the superintendent had told me before that I might have a job or there might be an opening in two or three weeks, and I went up there to see about the job. . . . I had business with the Fiske-Carter Construction Co. I had business with the Fiske-Carter Construction Co. each time, and also this time. . . . The superintendent told me to come back the second trip. I had made one trip up there, and he told me to come back the second trip and there would be an opening for me; my wife and son went with me; that is the reason they were along."
The male plaintiff parked his car and his wife and son remained in the car while he went in search of the superintendent in order to see about getting work in response to the invitation of the superintendent, given to him at some previous time.
The plaintiff, Mrs. Brigman, testified: "After he (husband) left I saw a little truck come up the road there, went out toward the main office at the upper end of the works; that was in the direction that my *Page 793 
husband went; I next saw a truck come backing back on the right; when I saw it coming back I threw up my hands; it looked like it was coming right straight back into my car and I threw up my hands and hollowed; I did not have time to get out of the car, and I sat still and threw up my hands and hollowed as loud as I could hollow, and when he struck the door it came through six or eight inches, . . . and the car came back and broke the door . . . and struck my ankle joint . . . and ruined it. . . . I did not have any warning or notice that the truck was going to back out until I saw it coming; it was four or five feet from me, I guess, when I saw it backing out of the road. It was a little parking place there. It is where the employees park their cars."
The plaintiff, Mrs. Brigman, further testified: "My car was standing in the little parking place; the truck came right in front of me; I paid no attention to it on account of looking at the drilling; there was terra cotta piping on the truck, piled up; the driver said "he was not paying any attention to where he was backing."
Issues of negligence, contributory, and damages were submitted to the jury and answered in favor of the plaintiff. The damage awarded to Mrs. Brigman was $2,000.00, and to her husband the sum of $150.00.
From the judgment upon the verdict the defendant appealed.
The question is this: What duty did the defendant owe the plaintiff, Lucy Brigman, under the circumstances disclosed by the evidence?
The defendant contends that the plaintiff, Lucy Brigman, was a trespasser or a mere permissive licensee and relies upon the principle of law announced in the case of Sweeny v. Old Colony R. R., (Mass.). 10 Allen, 368; 87 American Decisions, 644, which is thus stated: "In order to maintain an action for an injury to person or property by reason of negligence or want of due care, there must be shown to exist some obligation or duty towards the plaintiff, which the defendant has left undischarged or unfulfilled. This is the basis on which the cause of action rests. There can be no fault or negligence or breach of duty where there is no act or service or contract which a party is bound to perform or fulfill. All the cases in the books in which a party is sought to be charged on the ground that he has caused a way or other place to be encumbered, or suffered it to be in a dangerous condition, whereby accident and injury have been occasioned to another, turn on the principle that negligence consists in doing or omitting to do an act *Page 794 
by which a legal duty or obligation has been violated. Thus a trespasser who comes on the land of another without right cannot maintain an action if he runs against a barrier or falls into an excavation there situated. The owner of the land is not bound to protect or provide safeguards for wrongdoers. So a licensee, who enters on premises by permission only, without any enticement, allurement, or inducement being held out to him by the owner or occupant, cannot recover damages for injuries caused by obstructions or pitfalls. He goes there at his own risk, and enjoys the license subject to its concomitant perils. No duty is imposed by law on the owner or occupant to keep his premises in a suitable condition for those who come there solely for their own convenience or pleasure, and who are not either expressly invited to enter or induced to come upon them by the purpose for which the premises are appropriated and occupied, or by some preparation or adaptation of the place for use by customers or passengers, which might naturally and reasonably lead them to suppose that they might properly and safely enter thereon."
In that case the plaintiff was injured while crossing the defendant railroad as a licensee, "on a private way," leading from South Street to Federal Street in Boston. The defendant had made a plank crossing and kept a flagman there, partly to protect their own property and partly to protect the public. The plaintiff approached the crossing with a horse and wagon loaded with empty beer barrels. The flagman stopped him and then indicated that it was safe for him to cross. As he was crossing, a box car, pushed by an engine, struck him and broke both of his legs. The Sweeny case has been cited and approved in this State in the following cases: Quantz v. R. R.,137 N.C. 136; Monroe v. R. R., 151 N.C. 374; Muse v. R. R., 149 N.C. 443;Briscoe v. Lighting Power Co., 148 N.C. 403; Money v. Hotel Co.,174 N.C. 508, and perhaps other cases.
In authoritative decisions of this and other jurisdictions the degree of care to be exercised by the owner of premises to a person coming upon the premises, depends in the last analysis upon the attendant facts and circumstances. Thus, the measure of care due by an owner of premises varies with respect to whether the person upon the premises is a trespasser, a bare or permissive licensee, merely for his own convenience, pleasure or curiosity, or upon the premises by virtue of some invitation or inducement from the owner, either express or implied. The general rule is that a trespasser or permissive or bare licensee upon the property of another cannot recover for defects, obstacles or pitfalls upon the premises, unless the injury shall result from wilful or wanton negligence. Quantz v. R. R.,137 N.C. 136; Peterson v. R. R., 143 N.C. 260; Briscoe v. Lighting andPower Co., 148 N.C. 396; Bailey *Page 795 v. R. R., 149 N.C. 169; Monroe v. R. R., 151 N.C. 374; Money v. HotelCo., 174 N.C. 508; Jones v. Bland, 182 N.C. 70.
Upon the other hand, if a person enters upon the premises of another by reason of express or implied invitation, the owner is bound to exercise ordinary care for his safety. In discussing this aspect of the law,Bigelow, C.J., in the Sweeny case, supra, says: "The true distinction is this: A mere passive acquiescence by an owner or occupier in a certain use of his land by others involves no liability; but if he directly or by implication induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in a safe condition, suitable for such use, and for a breach of this obligation he is liable in damages to a person injured thereby." Whitley v. R. R., 122 N.C. 987; Morrow v.R. R., 134 N.C. 92; Fortune v. R. R., 150 N.C. 695; Leavister v. PianoCo., 185 N.C. 152.
The strict rule exempting the owner of premises from liability to a licensee is ordinarily applied when the negligence of the owner is passive. If the owner, while the licensee is upon the premises in the exercise of due care, is affirmatively and actively negligent in the management of his property or business, as a result of which the licensee is subjected to increased hazard and danger, the owner will be liable for injuries sustained as a result of such active and affirmative negligence. This distinction was referred to by Justice Manning in Monroe v. R. R., 151 N.C. at p. 377.
In Ferrell v. R. R., 172 N.C. at p. 684, Justice Hoke says: "It is undoubtedly the general rule that a trespasser cannot maintain an action against the owner for negligent injuries received by reason of conditions existent upon the premises, but this is a principle growing out of and dependent upon the right of ownership and considered essential to their proper enjoyment. All of the decisions in this jurisdiction, cited in support of defendant's exceptions, are cases of that character. Briscoe v.Lighting and Power Co., 148 N.C. 396, and others. Even as to suits of that kind, the position has been very much qualified, as in case of technical trespass, etc." In Stevens v. Nichols, 155 Mass. 475, it is held that "the licensor has, however, no right to create a new danger while the license continues." In Reardon v. Thompson, 149 Mass. 267, the Sweenycase, supra, is cited and approved, but Justice Holmes, speaking for the Court, says: "No doubt a bare licensee has some rights. The landowner cannot shoot him. It has been held that an owner would be liable for negligently bringing force to bear upon the licensee's person, as by running him down without proper warning."
The principle is thus stated in 1 Ann. Cas., p. 210: "But the freedom from liability of the owner to the licensee exists only when the negligence of the former is passive, the negligence of omission. If the *Page 796 
owner is affirmatively and actively negligent in the management of his property or business, thereby subjecting licensees to unusual and great danger, the owner will be liable for injuries thus occasioned." In support of this principle, the author cites Larmore v. Crown Point Iron Co., 101 N Y, App., 391. In that case the plaintiff went upon the premises of the owner to seek employment and was seriously injured by a lever which was thrown out of its socket, striking him and breaking both legs. Recovery was denied for the reason that the plaintiff was upon the premises "by the mere implied sufferance or license of the defendant, and not on its invitation express or implied"; and therefore the defendant was not liable "for injury happening from the operation of a defective machine on the premises not obviously dangerous." But the Court says further: "The duty of keeping premises in a safe condition even as against a mere licensee may also arise where affirmative negligence in the management of the property or business of the owner would be likely to subject persons exercising the privilege theretofore permitted and enjoyed to great danger. The case of running a locomotive without warning over a path across the railroad which had been generally used by the public without objection, furnished an example. a mere licensee; the negligence, if any, was passive and not active, of omission and not of commission."
Also, in Corrigan v. Union Sugar Refinery, 98 Mass. 577, the plaintiff in going through a private passageway owned by the defendant was struck and injured by barrels thrown out the windows of the building by defendant's agents. The Court cites the Sweeny case, but says: "Even if he was there under a permission which they might at any time revoke, and under circumstances which did not make them responsible for any defect in the existing condition of the way, they were still liable for any negligent act of themselves or their servants which increased the danger of passing and in fact injured him."
The rule established by the authorities in this and other jurisdictions is that, while the owner of the premises is not liable to a trespasser, bare or permissive licensee, coming upon the premises for his own purposes or by virtue of curiosity, and wholly disconnected from any business purpose, unless the injury results from the wilful and wanton negligence of the owner; yet this rule is usually restricted to injuries resulting from existent conditions upon the premises, or what is termed passive negligence. Upon the other hand, the owner is liable for any injuries brought about and caused by active negligence in the management or operation of the business or control of the premises, which would increase the hazard to the licensee or trespasser. *Page 797 
So, applying the established rules of liability to the facts of this case, even if the plaintiff was a trespasser or permissive licensee, as contended by the defendant, she was not injured as a result of existent conditions upon the premises or as a result of the passive negligence of omission, but she was injured by the actual negligence of the defendant in backing upon the car in which she was sitting, a loaded truck, without notice or warning, and while she was at a place which the defendant had designated as a parking place for automobiles. She was neither wandering over the premises nor thereupon by reason of idle curiosity, or upon a mission which could fairly be said to be wholly disconnected from the company's business. Her husband had been expressly invited to come upon the premises to seek employment. He, therefore, had a right to go upon the premises; he had a right to park his car near the roadway in the space designated by the defendant for such purpose. The car of the husband was there as a result of the invitation of the defendant, and certainly the plaintiff had a right to go with her husband and to remain in the car which was upon the premises at a proper place, by invitation of defendant, without becoming a trespasser or mere permissive licensee. In truth, the plaintiff's presence upon the premises of defendant was the result of the principle of implied invitation. Her status was that of implied invitee and falls within the principle announced in Kalus v. Bass, 122 Md. 467;89 A. 731. In that case the defendant advertised "rooms for rent." The father of the plaintiff went to examine the rooms and took the plaintiff, his minor son, along with him. In looking over the premises, a stairway fell, injuring the plaintiff and his father. The Court said: "The question as to the status of the son is one of interest and importance, and we have not found or had referred to us any decisions which deal with such a situation as the one here disclosed." After citing and discussing theSweeny case, the Court says further: "It is a general principle that the natural and probable consequence of an act are presumed to have been intended, and there can be no doubt that the conduct of the defendant in the case at bar was the original and efficient cause which induced the plaintiff's visit with his father to the premises in question with a view to their possible occupation by the family as tenants. The principle of implied invitation is sufficiently broad in its reason and policy to include such an inducement, and to entitle the plaintiff, under the circumstances shown by this record, to have the issue as to the facts upon which he relies, submitted to the determination of the jury."
The same principle has been practiced and applied in this State in the case of Fortune v. R. R., 150 N.C. 695. In that case the wife accompanied her husband to the railroad station for the purpose of seeing *Page 798 
him off as a passenger for Asheville. Justice Brown, speaking for the Court, says: "The defense must properly rest upon the theory that the plaintiff was on the car without defendant's consent, and that, being a trespasser, the defendant owed her no duty, except to refrain from wilful injury . . . . But the plaintiff was not in any sense a trespasser, and under the circumstances of this case her presence on the car platform was neither wilful nor negligent. Her presence there was not wrongful, because a wife who escorts a husband, or a husband a wife, to a seat on a railway train is not a mere trespasser to whom the company owes no duty except to abstain from wilful injury. It is true, plaintiff was not a passenger toward whom the defendant was bound to exercise the highest degree of care, but she was on its premises by its implied invitation, and it was bound to exercise ordinary care for her safety."
We hold, therefore, that the case was properly submitted to the jury, and the judgment is sustained.
No error.